UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| ZACH HILLESHEIM,<br><br>*Plaintiff*,<br><br>v.<br><br>CHICAGO STREET HOTEL ASSOCIATES, LLC; and KINSETH HOTEL CORPORATION,<br><br>*Defendants*. | Case No. _____<br><br>**COMPLAINT**<br><br>**Injunctive Relief Sought** |

Plaintiff Zach Hillesheim, by and through the undersigned counsel, brings this action against Chicago Street Hotel Associates, LLC, an Iowa limited liability company, and Kinseth Hotel Corporation, an Iowa business corporation for violations of the Americans With Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the "ADA") and its implementing regulations, and alleges as follows:

## INTRODUCTION

1.  Plaintiff brings this civil rights action against Defendants for failing to design, construct, and/or own or operate facilities that are fully accessible to, and independently usable by, persons with disabilities. Defendants owns and operate the hotel known as "Home2 Suites", which was constructed and first occupied after was first occupied after January 26, 1993, and was therefore required to be designed and constructed to be readily accessible to persons with disabilities. "Home2 Suites" contains architectural barriers to accessibility.

2. The violations alleged in this complaint occurred at "Home2 Suites", located at 17889 Chicago Street, Omaha, NE 68118.

3. Defendants' failure to provide equal access to "Home2 Suites" violates the mandates of the ADA to provide full and equal enjoyment of a public accommodation's goods, services, facilities, privileges, and advantages.

4. Defendants' conduct constitutes an ongoing and continuous violation of the law.

5. Accordingly, Plaintiff seeks a declaration that Defendants' facilities violate federal law and an injunction requiring Defendants to make modifications to the facilities so that they are fully accessible to, and independently usable by, individuals with disabilities. Plaintiff further requests that the Court retain jurisdiction over this matter for a period to be determined to ensure that Defendants continue to comply with the relevant requirements of the ADA.

## JURISDICTION AND VENUE

6. Jurisdiction of this Court arises under 28 U.S.C. §§ 1331 and 1343(a)(3). This action includes federal law claims brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189. The Court has the jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed R. Civ. P. 57.

7. Venue in this judicial district is proper because Defendants are located and transact business within this judicial district and have sufficient contacts to be subject to personal jurisdiction in this judicial district, and because this is the judicial district in which the acts and omissions giving rise to the claims occurred.

## PARTIES

8. Plaintiff Zach Hillesheim is a resident of the city of Omaha, Nebraska. At the time of his visit he was a resident of Nicollet, Minnesota. Plaintiff often traveled to Omaha with his girlfriend, who grew up in Omaha and lived there until 2005. They travel together to visit family, friends, and to sightsee in the Omaha area. Plaintiff Hillesheim moved to the Omaha area in May 2017.

9. Plaintiff suffers from, and all times relevant hereto has suffered from, a legal disability as defined by the ADA, 42 U.S.C. § 12102(2). Plaintiff is therefore a member of a protected class under the ADA, under the regulations implementing the ADA set forth at 28 C.F.R. § 36.101 *et seq*.

10. Plaintiff Hillesheim was paralyzed as an infant while undergoing surgery to address a congenital heart defect. During the surgery, his spine was severed, paralyzing him below the waist. Mr. Hillesheim cannot walk and uses a wheelchair for mobility. As a person with a disability, Mr. Hillesheim has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

11. Defendant Chicago Street Hotel Associates, LLC, an Iowa limited liability company, is the owner and lessor of the real property and improvements which are the subject of this action, the hotel known as "Home2 Suites", a place of public accommodation within the meaning of the ADA, located at the street address of 17889 Chicago Street, Omaha, NE 68118.

12. Defendant Kinseth Hotel Corporation, an Iowa business corporation, is the operator and lessee of the real property and improvements which are the subject of this action, the hotel known as "Home2 Suites", a place of public accommodation within the

meaning of the ADA, located at the street address of 17889 Chicago Street, Omaha, NE 68118.

## FACTUAL BACKGROUND

13. On February 14, 2017, Plaintiff Hillesheim attempted to patronize the hotel known as "Home2 Suites" in Omaha, Nebraska. Plaintiff and his girlfriend wished to stay at this hotel based on a recommendation.

14. Upon arrival, Plaintiff found that the "Home2 Suites" customer parking lot contained 91 total parking spaces and 5 parking spaces reserved as accessible parking spaces. 4 of the 5 reserved parking spaces were located on the front side of the hotel, and 1 reserved parking space was located on the rear side of the hotel.

15. The two reserved parking spaces on the north side of the building shared an access aisle that connected to the sidewalk surrounding the building.

16. One corner of this sidewalk was not level, but rather had multiple cross slopes that formed a steep curb ramp providing access between the raised sidewalk and the parking lot.

17. This curb ramp had no level landing at the top of the ramp or way to bypass the ramp, but rather required turning while ascending the ramp.

18. The corner curb ramp projected directly into the vehicular way in the "Home2 Suites" customer parking lot.

19. The alternative route for wheelchair users involved traveling through the loading area, where vehicles could park while loading unloading and passengers and luggage and waiting for passengers, blocking the route.

20. Photographs in Exhibit A to this Complaint depict the curb ramp in the "Home2 Suites" parking lot as they appeared on Plaintiff's February 14, 2017 visit.

21. In light of the architectural barriers at "Home2 Suites", Plaintiff Hillesheim is deterred from visiting "Home2 Suites" in the future. Plaintiff Hillesheim intends to return to "Home2 Suites" to patronize the facility by recommending visiting family members and friends to reserve rooms at the hotel, to but these architectural barriers deter him from doing so. He plans to return and patronize "Home2 Suites" when he learns that the premises have been made fully accessible to persons who use wheelchairs for mobility.

22. While living in Minnesota, Plaintiff Hillesheim traveled to Omaha on a regular basis, including multiple visits in 2016 and 2017. Hillesheim moved to Omaha in May 2017. He has signed a lease on a home in Omaha. He would enjoy being able to patronize Defendants' hotel.

23. Plaintiff Hillesheim attempted to access Defendants' premises, but could not do so independently on a full and equal basis because of his disabilities, due to the physical barriers to access and violations of the ADA that exist at Defendants' premises. As a result of Defendants' non-compliance with the ADA, Plaintiff Hillesheim cannot independently access the facilities and/or is excluded from full and equal enjoyment of the goods, services, privileges, advantages, and/or accommodations offered therein.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

24. On July 26, 1990, President George H.W. Bush signed into law the ADA, 42 U.S.C. § 12101, *et seq.*, a comprehensive civil rights law prohibiting discrimination on the basis of disability. In its findings, Congress determined that, among other things:

   a. Some 43 million Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole grows older;

   b. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, discrimination against indi-

    viduals with disabilities continues to be a serious and pervasive social problem;

c. Discrimination against individuals with disabilities persists in such critical areas as employment, public housing accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

d. Individuals with disabilities continually encounter various forms of discrimination; and

e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our society is justly famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 U.S.C. § 12101(a)(1)–(3), (5), (9).

25. Congress explicitly stated that the purpose of the ADA was to:

a. Provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities;

b. Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

c. Invoke the sweep of congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by individuals with disabilities.

42 U.S.C. § 12101(b)(1), (2), (4).

26. Title III of the ADA prohibits discrimination in the activities and facilities of places of public accommodation, and requires places of public accommodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities. 42 U.S.C. § 12181–89.

27. The ADA provided places of public accommodation one and one half years from its enactment to implement its requirements. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 2181; 28 C.F.R. § 36.508(a).

28. Pursuant to the mandates of 42 U.S.C. § 12134(a), the Department of Justice ("DOJ") promulgated federal regulations to implement the requirements of Title III of the ADA, which are codified at 28 C.F.R. Part 36. Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 C.F.R. Part 36) contains the ADA Standards for Accessible Design, which were based upon the ADA Accessibility Guidelines ("1991 ADAAG") published by the Access Board on the same date. Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181, *et seq.*; 28 C.F.R. § 36.508(a).

29. In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local government entities, as well as individuals with disabilities.

30. In 1999, based largely upon the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise the 1991 ADAAG.

31. The Access Board issued final publication of revisions to the 1991 ADAAG on July 3, 2004.

32. On September 30, 2004, the DOJ issued an advance notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG revisions.

33. On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

34. The extended process of revising the 1991 ADAAG culminated with the DOJ's issuance of the 2010 Standards for Accessible Design ("2010 Standards"). The 2010 Standards incorporated the revised 2004 ADA Accessibility Guidelines ("ADAAG"), as well as the requirements contained in subpart D of 28 C.F.R. Part 36. The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards became effective on March 15, 2011.

## FACTUAL ALLEGATIONS

35. Defendants have discriminated against Plaintiff on the basis of his disabilities by failing to comply with the requirements of the ADA and the ADAAG with regard to "Home2 Suites". A specific, though not exclusive, list of unlawful physical barriers and ADA violations present at "Home2 Suites" which limit the ability of persons in wheelchairs to access the facilities and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, includes the following:

    a. The parking lot serving "Home2 Suites" had 91 total parking spaces and 5 parking spaces reserved as accessible parking spaces, but only 3 of these reserved parking spaces were located on the shortest accessible route, in violation of ADAAG 208.3.1.

    b. The 2 reserved parking spaces on the north side of the customer parking lot were not located on the shortest accessible route, in violation of ADAAG 208.2 and 502.2.

    c. The sidewalk between the 2 north reserved parking spaces and the lobby entrance had multiple cross slopes greater than 1:48 at the corner occupied by a diagonal curb ramp, in violation of ADAAG 206.2.1 and 403.3.

    d. The diagonal curb ramp near the 2 north reserved parking spaces providing access to the sidewalk surrounding the building did not have a landing at the top of the ramp, in violation of ADAAG 206.2.1 and 406.4.

    e. The diagonal curb ramp near the 2 north reserved parking spaces providing access to the sidewalk required turning while on the ramp, creating cross slopes steeper than 1:48, in violation of ADAAG 206.2.1 and 405.3.

    f. The base of the diagonal curb ramp near the 2 north reserved parking spaces providing access to the sidewalk surrounding the building projected directly into the vehicular way, in violation of ADAAG 206.2.1 and 406.6.

    g. Upon information and belief, the diagonal curb ramp near the 2 north reserved parking spaces providing access to the sidewalk surrounding the building had a slope steeper than 1:12, in violation of ADAAG 206.2.1 and 405.2.

    h. The alternate route between the 2 north reserved parking spaces and the "Home2 Suites" building entrance required traveling through the loading zone, where cars could park and reduce the clear width of the accessible route to less than 36 inches, in violation of ADAAG 403.5.1.

36. The above listing is not to be considered all-inclusive of the barriers and violations of the ADA encountered by Plaintiff or which exist at "Home2 Suites". To

...
...
...

qualify as an accessible parking lot, and for a parking space to qualify an accessible parking space, the space must be located on the shortest accessible route, marked by appropriate signage, flanked by an access aisle, and comply with sloping requirements. ADAAG 206, 208, 402, 403, 405, 406, and 502.  To qualify as an accessible restroom the restroom must comply with ADAAG 304, 603, 604 and 606.

37. In order to fully remedy the discriminatory conditions, Plaintiff requires an inspection of "Home2 Suites" in order to photograph and measure all such barriers to access and violations of the ADA and the ADAAG.

38. Compliance with the ADA standards, and the ADAAG is required by 42 U.S.C §§ 12182 and 12183 because the facility was designed and constructed after January 26, 1993, and the violations to the ADAAG requirements are not a result of compliance being structurally impracticable. 28 C.F.R § 36.401(a)(1).

39. In the alternative, to the extent any architectural elements were constructed prior to that date, removal of architectural barriers required by 42 U.S.C § 12182(b)(2)(A)(iv) because removal of architectural barriers is readily achievable. Compliance with the ADA standards and the ADAAG is readily achievable by Defendants due to the lack of difficulty and low cost of remedying the above-listed barriers. Some of the above-listed violations can be remedied through the same measures prescribed by federal regulation as examples of modifications that are "readily achievable", including, but not limited to, creating accessible parking spaces. 28 C.F.R. § 36.304(b).

40. Compliance is also readily achievable due to the significant assistance available to businesses. Section 44 of the IRS Code allows a Disabled Access tax credit for small businesses with 30 or fewer full-time employees or with total revenues of $1 million or less, which is intended to offset the cost of undertaking barrier removal and alterations to improve accessibility. Section 190 of the IRS Code provides a tax deduc-

tion for businesses of all sizes for costs incurred in removing architectural barriers, up to $15,000. *See* ADA Update: A Primer for Small Business, http://www.ada.gov/regs2010/smallbusiness/smallbusprimer2010.htm#tax (Mar. 16, 2011).

41. As a person with a disability, Plaintiff Hillesheim has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

42. Without injunctive relief, Defendants' failure to remove accessibility barriers will continue to cause injury to Plaintiff, who will continue to be unable to independently access "Home2 Suites" and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, in violation of his rights under the ADA.

## FIRST CAUSE OF ACTION
**Violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101** *et seq.*

43. Plaintiff incorporates and realleges the above paragraphs.

44. Section 302(a) of Title III of the ADA, 42 U.S.C. §§ 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

45. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the opportunities afforded to other individuals.

46. Defendants have discriminated against Plaintiff and others in that they failed to make their place of public accommodation fully accessible to persons with disabilities on a full and equal basis in violation of 42 U.S.C. § 12182(a) and the regulations promulgated thereunder, including the ADAAG, as described above. Plaintiff Hillesheim has been denied full and equal access to "Home2 Suites" and/or has been denied the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations on a full and equal basis.

47. Defendants have failed to take any prompt and equitable steps to remedy their discriminatory conduct. Defendants' violations of the ADA and ADAAG are ongoing.

48. Defendants have failed to remove architectural barriers to full and equal access by Plaintiff, even though removing the barriers was required and is readily achievable.

49. Plaintiff Hillesheim plans to visit "Home2 Suites" again in the near future. Plaintiff is without adequate remedy at law, has suffered and is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm upon his planned return visit to "Home2 Suites" unless and until Defendants are required to remove the physical barriers to access and ADA violations that exist at Defendants' place of public accommodation, including those set forth specifically herein.

50. This Court has authority under 42 U.S.C. § 12188 to grant Plaintiff injunctive relief, including an order requiring Defendants to make "Home2 Suites" readily accessible to and independently usable by individuals with disabilities to the extent required by the ADA and ADAAG, and/or to close "Home2 Suites" until such time as Defendants cure the access barriers.

51. Plaintiff has retained the undersigned counsel for the filing and prosecution of this action, and is entitled to recover reasonable attorneys' fees, litigation expenses and costs from Defendants, pursuant to 42 U.S.C. §§ 12205, 12117, and 28 C.F.R. § 36.505.

**WHEREFORE**, Plaintiff respectfully requests:

   a. Plaintiff demands a trial in Omaha, Nebraska.
   b. That the Court issue a Declaratory Judgment that determines that Defendants' facilities, at the commencement of the instant suit, are in violation of Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and the relevant implementing regulations including the ADAAG.
   c. That the Court issue a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a), enjoining Defendants from continuing their discriminatory practices; including an order directing including an order directing Defendants to remove all barriers to the maximum extent feasible or in the alternative make all readily achievable alterations to their facilities so as to remove physical barriers to access and make their facilities fully accessible to and independently usable by individuals with disabilities to the extent required by the ADA; and also including an order requiring Defendants to make all reasonable modifications in policies, practices or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis.
   d. That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, or as otherwise provided by law; and

- 14 -

    e.  That the Court issue such other relief as it deems just and proper, and/or is allowable under Title III of the ADA.

DATED: <u>July 28, 2017</u>

                                    <u>/s/ Padraigin L. Browne</u>
                                    Padraigin L. Browne (MN Bar # 389962)
                                    Browne Law LLC
                                    8530 Eagle Point Blvd, suite 100
                                    Lake Elmo, MN 55042
                                    E-mail: paddy@brownelawllc.com
                                    Phone: (612) 293-4805